IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 27, 2022

**ADAM S. MASSENGILL V. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Claiborne County**
**No. 2018-CR-2915, 2019-CR-3162      E. Shayne Sexton, Judge**

———————————————————

**No. E2022-00092-CCA-R3-PC**

———————————————————

The Petitioner, Adam S. Massengill, entered a guilty plea to sixteen counts of aggravated statutory rape, and the trial court imposed an effective sentence of twenty-five years' incarceration pursuant to the plea agreement. Thereafter, the Petitioner timely filed a petition for post-conviction relief, and the post-conviction court denied relief. The Petitioner appeals, arguing that he received ineffective assistance of counsel and that his guilty plea was involuntary and unknowing. After review, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and TOM GREENHOLTZ, JJ., joined.

Noah J. Patton, Tazewell, Tennessee, for the Appellant, Adam S. Massengill.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Jared R. Effler, District Attorney General; and Graham E. Wilson, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Guilty Plea.** On July 12, 2018, the Petitioner filed a waiver of trial by jury and a request for acceptance of a plea of guilty, stating that he wished to plead guilty to sixteen counts of aggravated statutory rape, a Class D felony, in exchange for an effective sentence of twenty-five years. At the July 13, 2018 plea submission hearing, the Petitioner agreed that he had waived indictment by the grand jury and that each count of aggravated statutory rape carried a two- to twelve-year prison sentence. He acknowledged that he had a right to plead not guilty and have his case tried by the court, either by a jury or the judge. He also acknowledged that he could either testify on his own behalf or not testify and that his

silence could not be used against him. In addition, the Petitioner recognized that he had a right to call witnesses to testify on his behalf at trial and that he had the right to confront and cross-examine any witnesses testifying against him. He confirmed that he had a right to appeal any verdict returned against him or any ruling by the trial court that was adverse to him. When the trial court asked if he understood that he was giving up these rights by entering his guilty plea, the Petitioner replied, "Yes, sir."

The Petitioner stated that he was thirty-one years old, that he was literate, and that he had earned his bachelor's degree. He affirmed that he was not under the influence of alcohol, drugs, or medication that could affect his ability to understand the plea process. He also stated that no one had forced him or threatened him to enter his guilty plea and that no one had made any promises to him in exchange for his guilty plea. He acknowledged that he was entering his guilty plea of his own free will.

When the trial court asked if he was satisfied with trial counsel's work on his case, the Petitioner replied, "Yes, sir." The court then asked, "Are you satisfied that your attorney has investigated the facts and researched the law to the point that he would either be ready for trial or can make the recommendation [to plead guilty] that's been made?" The Petitioner responded, "Yes, sir." The Petitioner confirmed that he had no complaints about trial counsel. Trial counsel then acknowledged that the plea procedures were technically correct and were in the Petitioner's best interest and that he had investigated the facts and researched the law to the point that he would either be ready for trial or could make the recommendation for the Petitioner to enter his guilty plea.

The Petitioner acknowledged that he was entering a guilty plea to sixteen counts of aggravated statutory rape because he was guilty of these charges. The State provided facts in support of the Petitioner's guilty plea, stating that the Petitioner had sexually penetrated the juvenile victim, B.G., sixteen times over the years 2016, 2017, and 2018, when the victim was at least thirteen years of age but less than eighteen years of age and the Petitioner was at least ten years older than the victim. The Petitioner acknowledged that the State's recitation of facts was correct, and trial counsel asserted that this factual recitation was consistent with his investigation of the case. Thereafter, the trial court found the Petitioner guilty of the sixteen counts of aggravated statutory rape and, pursuant to the parties' plea agreement, imposed an effective twenty-five-year sentence of imprisonment with release eligibility after service of thirty percent. The court also informed the Petitioner that, upon release, he was subject to the sex offender registration restrictions.

**Post-Conviction.** On April 10, 2019, the Petitioner filed a timely pro se petition for post-conviction relief, alleging in pertinent part that his convictions were based on an unlawfully induced guilty plea or a guilty plea involuntarily entered without understanding the nature or consequence of the plea and that he was denied effective assistance of counsel.

Following the appointment of counsel, the Petitioner filed an amended post-conviction petition, alleging similar claims. After the Petitioner was appointed new post-conviction counsel, he filed a second amended post-conviction petition, alleging ineffective assistance of counsel and an unlawfully induced guilty plea.

At the evidentiary hearing, post-conviction counsel asserted that the Petitioner's case was never presented to the grand jury and that the only time the Petitioner appeared before the criminal court was to enter his guilty plea. He added that the Petitioner had been arrested around the middle of May 2018 and had entered his guilty plea approximately two months later on July 13, 2018. Post-conviction counsel argued that trial counsel was ineffective because there was "a lack of investigation" by trial counsel and "there was never any discovery, obviously nothing in the Criminal Court, no motions of any type whatsoever [filed] in this case." At this hearing, the Petitioner testified on his own behalf, and the State presented the testimony of trial counsel.

The Petitioner testified that at the time of his arrest, he worked as a mailman and worked in registration at a hospital and had no experience with the criminal justice system. He said that Detective Reagan and another detective approached him on his way home, informed him that there had been some allegations made against him, and told him he needed to answer some questions at the jail. The Petitioner said that just before going into the jail, he asked Detective Reagan for an attorney, and she replied that he did not need to worry about an attorney and that she just had to ask him a few questions. He said that he went into the interview room and answered some questions for Detective Reagan. At the conclusion of his interview, Detective Reagan called the district attorney and then arrested him.

The Petitioner stated that trial counsel represented him on these criminal charges. He met with trial counsel "[r]oughly three times" prior to entering his guilty plea, and these meetings were held in the back room of the courthouse or at the jail and lasted thirty to forty-five minutes each. During these meetings, trial counsel gave him a "huge stack" of cell phone records that included every text message that he had sent for the past six months. The Petitioner said that within the first two weeks of his representation, trial counsel began "pressing [him] to sign a plea deal[.]" Although the Petitioner asked trial counsel for additional discovery, which would have included all of the evidence the State had against him, trial counsel told him he "would try to get it, but he didn't know if he could." Even though the Petitioner was adamant about getting additional discovery, trial counsel made "light of it" or acted "like we couldn't really do anything about that part of it," which was "shocking" to the Petitioner.

The Petitioner said that trial counsel informed him that he could receive "up to 80 some years if [he] went to trial" and that there was a possibility the State would bring new

charges against him. He stated that other than his cell phone records, he reviewed no materials in the State's possession.

The Petitioner said that two to four weeks after his arrest, the State made a plea offer of twenty-five years, and trial counsel advised him to accept it. At the time, he was "in shock from all this" and was unable to "stay in regular contact with [his] family." He said that trial counsel advised him to accept the State's plea offer because he "could get more time if [he] didn't take it." Trial counsel was unable to tell him how long he had to accept this offer. The Petitioner informed trial counsel that he did not believe the State's offer "was a fair punishment" for his charges. Although the Petitioner acknowledged that he did not ask trial counsel to take his case to trial, he claimed that trial counsel had him "scared to death" about proceeding to trial. The Petitioner said he did not want to put his family through the stress of trial and did not want the details of the case "in the public eye." He said he was trying to "mitigate everything" because he did not know "how everything went [regarding criminal cases][,]" was "still in . . . shock" about what had happened, and was "just scared." The Petitioner said he believed that trial counsel "wanted [his case] over as soon as possible" and was not preparing to take his case to trial. The Petitioner acknowledged that trial counsel brought him the plea deal and reviewed it with him.

On cross-examination, the Petitioner admitted telling trial counsel and Detective Reagan that he engaged in a sexual relationship with the thirteen-year-old victim. He acknowledged that he was not innocent of the charged offenses but claimed that his punishment did "not fit the crime." Although the Petitioner claimed the evidence in his case mainly consisted of his confession, he admitted that the State also had all of his text messages to the victim for the last six months, which was a substantial part of the case as well. The Petitioner said that he did not really remember the plea process because it "was all a blur." Although he acknowledged telling the trial court that he was satisfied with trial counsel's performance, he claimed he "was not in a position to say [whether he was satisfied with counsel] at that point" because he "didn't even know what good representation [by] a lawyer was." He admitted telling the trial court at the plea submission hearing that trial counsel had investigated the facts and researched the law so that he could either be ready for trial or make a recommendation about pleading guilty. However, the Petitioner asserted that at the time he made that statement he was "in shock and still reeling" from his arrest and charges. The Petitioner acknowledged that if trial counsel testified that he read every single word on the plea form to him, he would not disagree with that testimony. He also admitted telling the trial court that he understood his plea.

Trial counsel testified that he represented the Petitioner through the guilty plea process. He said he was appointed to represent the Petitioner in general sessions court, where the Petitioner had been charged with "36 counts of aggravated statutory rape." Thereafter, he "had multiple conversations" with the Petitioner. Trial counsel stated that

he had met with the Petitioner a total of four times, two times at court and two times in the jail "at least." He said that of the meetings at the jail, one meeting lasted around an hour, and the other lasted over two hours.

Trial counsel stated that the evidence he received from the State consisted of "the computer printouts from the victim's computer" and "all text messages" from the Petitioner's cell phone. He said the Petitioner admitted to him that he engaged in a sexual relationship with the thirteen-year-old victim. In addition, by the time trial counsel was appointed, the Petitioner had already confessed to Detective Reagan regarding his sexual relationship with the victim. Trial counsel said the Petitioner's issue with his confession was that he believed Detective Reagan "was just too nice to him which threw him off" because he believed the detective was "disingenuous." He said that he reviewed the criteria to suppress a confession with the Petitioner. However, he noted that the Petitioner had a strong education and believed the Petitioner had been Valedictorian of his graduating class. Trial counsel also said he was "about 80 percent sure [Detective] Reagan in Court showed [him] the [Petitioner's] signed waivers." He said that based on what the Petitioner told him about "the circumstances of the confession," he did not believe he would be able to get his confession suppressed."

Trial counsel said that he reviewed with the Petitioner the text messages the Petitioner sent to the victim, the applicable sex offenses, and the statutes governing consecutive sentencing. He also highlighted the "strengths and weaknesses" of the Petitioner's case and told him he believed the trial court would impose consecutive sentencing. He asserted that the district attorney was considering charging the Petitioner with additional charges, including rape of a child.

Trial counsel said that although the Petitioner received an offer of twenty-five years with a release eligibility of thirty percent in general sessions court, the State's offer would go up to twenty-five years at one hundred percent if the Petitioner was indicted in criminal court. He informed the Petitioner that he did not think he had a good case on multiple convictions but believed he could "beat [the] rape of a child [charge] if it did go to trial."

Trial counsel denied ever expressing an unwillingness to try the Petitioner's case if that was what the Petitioner wanted. However, he recommended that the Petitioner accept the State's offer because if he turned the offer down he would be facing new charges of rape of a child and electronic solicitation along with the existing thirty-six counts of aggravated statutory rape. He noted that the Petitioner's text messages showed there were negotiations regarding future sex acts and there were photographs sent. He told the Petitioner that "the best [he] could do at trial would be maybe like 15 years[,] but if he went to trial and lost, [the Petitioner] could potentially be looking at the rest of his life in prison."

He also reviewed "every word of the plea" with the Petitioner and told him that if he wanted a trial, he was willing to go to trial.

On cross-examination, trial counsel agreed that he represented the Petitioner from June 11, 2018, to July 13, 2018. He said he reviewed the text messages but never received the State's entire file and never received the Petitioner's confession. Trial counsel told the Petitioner that he was not entitled to discovery in general sessions court but that he could file a discovery motion if he wanted to take his case to criminal court. He acknowledged that he never asked for any Giglio or Brady material and never filed a motion to suppress. He also said the Petitioner wanted to waive his preliminary hearing. When asked if he interviewed any witnesses, trial counsel said that he talked to Detective Reagan and thought he saw the Petitioner's waivers before he talked to the Petitioner about the circumstances surrounding his confession. He said he did not take the Petitioner's case to trial because the Petitioner did not want to proceed to trial.

At the conclusion of the hearing, the post-conviction court acknowledged that while "[c]ases this serious probably need to grow some age on them before they are resolved in a fashion such as this," a "fast timetable" did not necessarily mean there had "been ineffective assistance of counsel or a lack of voluntariness [with the guilty plea]." The court found that one of the "most telling" things it heard during the hearing was that the Petitioner, the "Salutatorian" of his graduating class, admitted that he "wanted [his guilty plea]" done. The court also noted that there was "nothing that jump[ed] out on the guilty plea colloquy that suggest[ed] this [guilty plea] was less than voluntary," although it recognized that the Petitioner seemed to be more focused on the "information that [trial] counsel gleaned prior to advising [him] about pleading guilty[.]" The post-conviction court acknowledged that the case did "seem hurried," although it was not sure of "the nature of that"; it also recognized that the case "did not even go to a grand jury" and was "resolved by an information." Nevertheless, the post-conviction court found that "discussions were had before the information was entered concerning what the grand jury would be presented [with]." It also determined that the Petitioner faced "a heightened level of sentencing" pertaining to the potential "rape of a child" charge as compared to "the sentence that was ultimately agreed upon [as a part of the Petitioner's guilty plea]." The post-conviction court concluded that the "specter of facing a longer sentence" was "a reasonable explanation why someone would enter this [guilty plea]."

The post-conviction court also found that the Petitioner was "not denying bad acts" but was "saying he got a raw deal." It recognized that if the Petitioner had been convicted at trial of rape of a child, he would have received a harsher sentence because there was no release eligibility for the rape conviction. The court also determined that the Petitioner entered his guilty plea to avoid "roll[ing] the dice" at trial. It specifically found there was

no proof presented that the Petitioner did not have the opportunity to make "a responsible decision" about the "consequences" of his guilty plea.

The post-conviction court also concluded that the Petitioner had not established the deficiency prong for ineffective assistance of counsel, asserting that the "Strickland standard in this set of circumstances ha[d] been met." It noted that this was "a cautionary tale . . . to anyone who agrees to go to prison" because any guilty plea involving incarceration should be entered into "very cautious[ly] and thoughtful[ly]" because "it's easy to second guess it." Lastly, the post-conviction court stated:

> This [length of time between arrest and guilty plea] seems short, but it doesn't mean it's wrong. So I'm gonna find that the claim of ineffective assistance of counsel has not been established. I'm gonna find that the voluntariness of the entry of the guilty plea was met. It certainly wasn't overborne by anything that's been established in this hearing[.]

Following this hearing, the post-conviction court entered an order denying post-conviction relief. Thereafter, the Petitioner filed a premature, but timely, notice of appeal.

## ANALYSIS

On appeal, the Petitioner argues that he received ineffective assistance of counsel and that his plea was involuntary and unknowing. The State responds that the post-conviction court properly denied relief. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103. A post-conviction petitioner has the burden of proving his or her factual allegations by clear and convincing evidence. Id. § 40-30-110(f); see Tenn. Sup. Ct. R. 28, § 8(D)(1); Nesbit v. State, 452 S.W.3d 779, 786 (Tenn. 2014). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

This court reviews "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." Whitehead v. State, 402 S.W.3d 615, 621 (Tenn. 2013) (citing Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Calvert v. State, 342 S.W.3d 477, 485 (Tenn. 2011)). However, a post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them.

Calvert, 342 S.W.3d at 485 (citing Grindstaff, 297 S.W.3d at 216; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)). As a result, "appellate courts are not free to re-weigh or re-evaluate the evidence, nor are they free to substitute their own inferences for those drawn by the post-conviction court." Whitehead, 402 S.W.3d at 621 (citing State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001)). "As a general matter, appellate courts must defer to a post-conviction court's findings with regard to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." Id. (citing Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999)).

While the post-conviction court entered an order denying relief, the written order stated only that "[b]ased upon the evidence presented, arguments of counsel, and the entire record, it is hereby ORDERED, ADJUDGED AND DECREED that the Motion for Post-Conviction Relief is Denied." A post-conviction court is required to set forth in its written order "all grounds presented" and to state "the findings of fact and conclusions of law with regard to each ground." Tenn. Code Ann. § 40-30-111(b). Although Code section 40-30-111(b) has been construed as mandatory, a post-conviction court's failure to fully comply does not always require reversal because the primary intent of the requirement is to facilitate appellate review. See State v. Swanson, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984) (noting that the failure of the post-conviction court to abide by this requirement does not always mandate a reversal because "[t]he primary intent of the legislature underlying this requirement is to facilitate appellate review of the lower court's proceedings, and the failure to meet the requirement neither constitutes constitutional abridgement nor renders the conviction or sentence of the appellant void or voidable"); cf. Brown v. State, 445 S.W.2d 669, 671 (Tenn. Crim. App. 1969) (stating that "[w]ithout a clear and detailed finding of fact by the trial judge, the petitioner and his counsel and the appellate court are at a complete loss to know the basis of the trial judge's decision and judgment"). This court has specifically held that if a post-conviction court's written order fails to reflect findings of fact and conclusions of law for each ground, but the court makes oral findings and conclusions from the bench that are reflected in the record, the lack of statutory compliance is harmless. State v. Higgins, 729 S.W.2d 288, 290 (Tenn. Crim. App. 1987) (concluding that although the post-conviction court's written order did not reflect findings of fact and conclusions of law for each ground for relief, the court "orally pronounced" its findings and conclusions from the bench, "rendering the error harmless"). In light of the post-conviction court's detailed oral findings of fact and conclusions of law at the conclusion of this hearing, the court's entry of the written order denying relief, the testimony presented at the evidentiary hearing, and the record as a whole, we conclude that the record is sufficient for meaningful appellate review of the Petitioner's issues.

**I. Ineffective Assistance of Counsel.** The Petitioner argues that trial counsel provided ineffective assistance by failing to adequately investigate his case before advising him to enter his guilty plea. Specifically, he claims trial counsel was deficient in failing to

request the State's entire file and in failing to try to suppress his statements to detectives before advising him to plead guilty. He claims trial counsel told him to plead guilty after "receiving the phone records the State chose to provide" and after "speaking with a detective in court." While the Petitioner acknowledges that trial counsel negotiated his plea agreement at the general sessions level "where he had no right to discovery[,]" he claims that trial counsel encouraged him to waive his preliminary hearing and plead guilty in the criminal court. He also asserts that the trial court "expressed concerns with how quickly [trial counsel] resolved this case." The Petitioner also argues that the aforementioned deficiencies were prejudicial because there is a reasonable probability that, but for trial counsel's errors, he would not have pleaded guilty and would have proceeded to trial.

The right to effective assistance of counsel is protected by both the United States Constitution and the Tennessee Constitution. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. A claim for post-conviction relief based on alleged ineffective assistance of counsel is a mixed question of law and fact. Moore v. State, 485 S.W.3d 411, 419 (Tenn. 2016); Mobley v. State, 397 S.W.3d 70, 80 (Tenn. 2013) (citing Calvert, 342 S.W.3d at 485).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) this deficient performance prejudiced the defense. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). However, to establish prejudice in the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the petitioner would not have entered his guilty plea and would have proceeded to trial. Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad, 938 S.W.2d at 370.

In assessing an attorney's performance, we "must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462 (citing Strickland, 466 U.S. at 689). In addition, we must avoid the "distorting effects of hindsight" and must "judge

the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Id. at 688-89. "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369). Nevertheless, "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" Id. (quoting Goad, 938 S.W.2d at 369). Adequate preparation specifically includes counsel's "'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" Burns, 6 S.W.3d at 462 (quoting Strickland, 466 U.S. at 691).

The post-conviction court found that one of the "most telling" things it heard during the hearing was that the Petitioner, who was the Salutatorian of his graduating class, admitted that he "wanted [his guilty plea]" done. Although the court acknowledged that the Petitioner's case did "seem hurried," it found that "discussions were had before the information was entered concerning what the grand jury would be presented [with]." The court recognized that the Petitioner faced "a heightened level of sentencing" pertaining to the potential "a rape of a child" charge as compared to "the sentence that was ultimately agreed upon [as a part of the Petitioner's guilty plea]." It also noted that if the Petitioner were convicted of rape at trial, he would have no release eligibility. The post-conviction court found that the Petitioner was "not denying bad acts" but was "saying he got a raw deal" and concluded that the "specter of facing a longer sentence" was "a reasonable explanation why someone would enter this [guilty plea]." The court also determined that the Petitioner entered his guilty plea to avoid "roll[ing] the dice" at trial and that there had been no proof presented that the Petitioner did not have the opportunity to make "a responsible decision" about the "consequences" of his guilty plea. The court stated, "This [length of time between arrest and guilty plea] seems short, but it doesn't mean it's wrong." Ultimately, the post-conviction court concluded that the Petitioner had failed to establish the deficiency prong necessary to prove ineffective assistance of counsel.

The record fully supports post-conviction court's findings of fact and conclusions of law. Regarding the Petitioner's claim that trial counsel was ineffective in failing to request the State's entire file before advising him to plead guilty, we emphasize that trial counsel could not file a motion for discovery in general sessions court, and the Petitioner faced additional charges, including rape of a child, and a much harsher sentence following an indictment in criminal court. Moreover, if the Petitioner had been indicted, the State's plea offer would have changed from twenty-five years at thirty percent to a far less favorable sentence of twenty-five years at one hundred percent. When the State's offer

was received, trial counsel was aware of substantial evidence of the Petitioner's guilt, including all the messages between the Petitioner and the victim and the Petitioner's confession to detectives, which trial counsel did not believe could be suppressed after talking to the Petitioner and Detective Reagan. Given this set of circumstances, trial counsel's advice to plead guilty, without requesting the State's entire file, was not "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Accordingly, the Petitioner has not shown that trial counsel was deficient.

Regarding the Petitioner's claim that trial counsel was ineffective in failing to try to suppress his statements before advising him to plead guilty, we note that the Petitioner never called Detective Reagan or any other detective or witness to testify at the post-conviction hearing and relied only on his own testimony to show that he had requested counsel prior to his interview. We reiterate that trial counsel knew there was substantial evidence of the Petitioner's guilt, including all the messages between the Petitioner and the victim and the Petitioner's confession, which trial counsel did not believe could be suppressed. Trial counsel also would have known that if the Petitioner proceeded to trial, then the juvenile victim would have testified against the Petitioner. Taking all this into consideration, we conclude that the Petitioner has failed to show that a suppression motion would have been granted, that trial counsel's failure to file such a motion was objectively unreasonable, or that but for counsel's unreasonable omission, there is a reasonable probability that the verdict would have been different absent the excludable evidence. See Phillips v. State, 647 S.W.3d 389, 404 (Tenn. 2022) ("[T]o establish a successful claim of ineffective assistance of counsel based on counsel's failure to file a motion to suppress evidence on Fourth Amendment grounds, the Petitioner must prove: (1) a suppression motion would have been meritorious; (2) counsel's failure to file such motion was objectively unreasonable; and (3) but for counsel's objectively unreasonable omission, there is a reasonable probability that the verdict would have been different absent the excludable evidence." (citations and internal quotation marks omitted)). Trial counsel, after evaluating the strength of the State's evidence, made a reasonable, strategic decision to not file a motion to suppress and to encourage the Petitioner to accept the more favorable offer by the State. See Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]"). Accordingly, trial counsel's failure to file a motion to suppress before advising him to plead guilty was neither deficient nor prejudicial. Because the Petitioner has failed to show that trial counsel provided ineffective assistance on either of these claims, the Petitioner is not entitled to relief.

**II. Involuntary Guilty Plea.** The Petitioner also asserts that his guilty plea was involuntary and unknowing because he entered it before reviewing all of the State's proof against him, including any exculpatory evidence the State may have possessed. Applying the Blankenship factors, he admits that he is an educated person. However, he argues that

- 11 -

he had no prior experience with the criminal justice system or with law enforcement. He also asserts that trial counsel was ineffective, that he had limited opportunities to confer with trial counsel, and that trial counsel advised him that he would likely serve a minimum of fifteen years in prison or perhaps an effective life sentence, despite the limited information trial counsel had obtained from the State. The Petitioner asserts that he entered his guilty plea because he was "scared to death to go to trial," was "still in shock" about his arrest and the charges against him, was concerned about his family, and did not believe that trial counsel was "truly interested in representing him at a trial."

The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo. Lane, 316 S.W.3d at 562. To enter a guilty plea, an individual must waive his constitutional rights. Bush v. State, 428 S.W.3d 1, 9 (Tenn. 2014). However, in order to be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. Lane, 316 S.W.3d at 562 (citing State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)). When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Id. (quoting Grindstaff, 297 S.W.3d at 218). If a guilty plea is not knowingly, voluntarily, and intelligently entered, then the defendant has been denied due process, and the guilty plea is void. Id. (citing Boykin, 395 U.S. at 243 n.5).

A plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats[.]'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). In determining whether a guilty plea is voluntarily and intelligently entered, a trial court must look at a number of factors, which include the following:

> 1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship, 858 S.W.2d at 904).

"[T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a

- 12 -

formidable barrier in any subsequent collateral proceedings." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977). Because such statements carry a strong presumption of truthfulness, a petitioner, in order to overcome this presumption, must present more than "conclusory allegations unsupported by specifics" or "contentions that in the face of the record are wholly incredible." <u>Id.</u> at 74.

Applying the <u>Blankenship</u> factors, the Petitioner acknowledges that he was educated. While the Petitioner may have been unfamiliar with criminal proceedings, he was represented by trial counsel, was able to meet with trial counsel at least three times before entering his plea, and the Petitioner was able to use his intellect to ask critical questions and to confer with counsel about how best to resolve his case. The record shows that trial counsel was aware that if indicted, the Petitioner would face significant additional charges, a harsher sentence and a much less favorable plea offer from the State. Trial counsel also knew that if the Petitioner lost at trial, he could spend the rest of his life in prison, a fact that he clearly communicated to the Petitioner. The transcript of the plea submission hearing shows that the trial court informed the Petitioner of the sentences he was facing, the details of his plea agreement, the rights he was waiving, and the consequences of entering his plea, and the Petitioner confirmed that he understood. The Petitioner admitted at the post-conviction hearing that he entered his guilty plea because he did not want to put his family through the stress of a trial and did not want the details of the case "in the public eye." The record also overwhelmingly establishes that the Petitioner entered his guilty plea because he was facing additional charges, including rape of a child, and a substantially harsher sentence if he was found guilty at trial. The record shows the Petitioner had a choice: he could either be indicted, where he would have access to full discovery but would be subject to a much harsher sentence, or he could enter a guilty plea and receive a more favorable sentence. Although the Petitioner argues that his guilty plea was involuntary and unknowing because he entered it before reviewing all of the State's proof against him, the record shows that the Petitioner entered his guilty plea because it was the best course of action available to him under the particular circumstances of this case. <u>See</u> <u>Lane</u>, 316 S.W.3d at 562. Because the Petitioner has failed to show that his plea was involuntary or unknowing, he is not entitled to relief.

## **<u>CONCLUSION</u>**

We affirm the judgment of the post-conviction court.

_____
CAMILLE R. MCMULLEN, JUDGE

- 13 -